[Civ. No. 19851. Third Dist. May 27, 1981.]

JACK L. PUGH et al., Plaintiffs and Appellants, v.
CITY OF SACRAMENTO et al., Defendants and Respondents.

COUNSEL

Saulque & Viets and Richard E. Saulque for Plaintiffs and Appellants.

James P. Jackson, City Attorney, and Theodore H. Kobey, Jr., Assistant City Attorney, for Defendants and Respondents.

OPINION

**CARR, J.**—This is an appeal from a judgment of dismissal entered after the demurrer of respondent City of Sacramento (City) to appellants' class action complaint was sustained without leave to amend.

The sole issue on appeal is whether the provisions of article XIII A of the California Constitution, prohibiting a city from enacting an ordinance imposing a transaction or sales tax on the sale of real property within such city, took effect on June 7,. 1978, the day after the election in which it was enacted, or July 1, 1978.

On June 6, 1978, the California electorate voted to add article XIII A (commonly known as Prop. 13). On June 29, 1978, respondent City enacted an ordinance[1] imposing a tax of one-fourth of 1 percent of the

---

[1]Ordinance No. 4101, adding article IX to chapter 41 of the Sacramento City Code, provides in pertinent part:
"Sec. 41.127 *Purpose.* The tax imposed under this article is solely for the purpose of

value of the consideration on all sales or transfers of real property in the City (§ 41.128.) On or about June 18, 1979, appellants purchased a home in Sacramento; pursuant to the ordinance, a transfer tax of $103.13 was imposed. The Pughs paid the tax, but filed with City a claim for a refund on behalf of themselves and the class of transferrors or transferees similarly situated, who have paid the tax imposed by the ordinance. The claim was deemed rejected by the failure of the City to act on the claim and this action ensued.

Article XIII A is comprised of six sections. The first and second respectively limit tax rates and provide assessment standards for real property. Section 3 limits the method of changes in *state* taxes: "From and after the effective date of this article, any changes in State taxes enacted for the purpose of increasing revenues collected pursuant thereto whether by increased rates or changes in methods of computation must be imposed by an Act passed by not less than two-thirds of all members ... of the Legislature, except that no new ad valorem taxes on real property, or sales or transaction taxes on the sales of real property may be imposed."

Section 4 imposed similar restrictions upon local entities: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

Section 5 purports to set the effective date of the article by providing: "This article shall take effect for the tax year beginning on July 1 following passage of this amendment except Section 3 which shall become effective upon the passage of this article."

Appellants assert that it was not the intent of the drafters that section 4 of article XIII A become effective July 1, 1978, but rather the day after the election (June 7, 1978) as provided by section 4, article XVIII of the California Constitution, which states in pertinent part that

raising income and revenue which is necessary to pay the usual and current expenses of conducting the municipal government of the City of Sacramento.

"Sec. 41.128 *Imposition of Tax.* There is hereby imposed a tax on all transfers by deed, instruments, writings or any other document by which any lands, tenements or other interests in real property sold, located in the City of Sacramento, are or is granted, assigned, transferred or otherwise conveyed to or vested in a purchaser, or purchasers thereof, or any other person or persons, by his or their direction. Said tax shall be levied at the rate of one fourth of one percent of the value of consideration."

"A proposed amendment or revision shall be submitted to the electorate and if approved by a majority of votes thereon takes effect the day after the election *unless the measure provides otherwise....*" (Italics added.) They argue that section 5 is applicable only to sections 1 and 2, which set the tax rate and assessment methods. The basis for this argument is the language "This article shall take effect for the tax year beginning July 1," which, according to appellants, signifies an intent to avoid complex practical problems for tax collectors and assessors by deferring the rate and assessment provisions to the beginning of the next fiscal year (approximately three weeks after the election). We find no support for this interpretation in article XIII A. Contrariwise, the clear, unambiguous language of the relevant sections dictates an effective date of July 1, 1978. Unlike section 3, there is no provision that section 4 shall become effective immediately. Without such express provisions, we cannot interpret the amendment in a manner contrary to the plain meaning of the words employed. ▮ "Constitutional provisions must be construed to give full force and effect to every portion thereof. It is the legal intendment that each and every clause has been inserted for a useful purpose and when rightly understood has some practical operation. [Citations.]" (*In re Quinn* (1973) 35 Cal.App.3d 473, 482 [110 Cal.Rptr. 881].) ▮ Moreover, "a constitutional amendment should be construed in accordance with the natural and ordinary meaning of the words as generally understood at the time of its enactment.... Accordingly, where it does not appear that words used in a constitutional amendment were used in a technical sense, the voters must be deemed to have construed the amendment by the meaning apparent on its face according to the general use of the words employed. (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537 ..." (*In re Quinn, supra*, at p. 482.)

In *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208 [149 Cal.Rptr. 239, 583 P.2d 1281], the Supreme Court upheld the validity of article XIII A as a whole against multiple constitutional challenges.

In *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 862 [167 Cal.Rptr. 820, 616 P.2d 802], the Supreme Court held "The tax rate and valuation limitations took effect for the tax year beginning July 1, 1978, pursuant to section 5 of article XIII A and the implementing legislation subsequently adopted...." In determining article XIII A was inapplicable to the 1978-1979 unsecured tax rolls, the court acknowledged ballot pamphlets may be considered as a construction aid to determine "'the probable meaning of *uncertain* language.'" ▮ But

"Where language is clear and unambiguous, however, 'there is no need for construction, and courts should not indulge in it.' (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 . . . ." (P. 866; italics in original.)

Appellants urge there were compelling reasons for deferring the tax rate and valuation limitations until the next fiscal year, but no compelling reason to postpone the effective date prohibiting local entities from imposing new transfer and sales taxes on real property; the essential purpose of article XIII A is to reduce government spending and provide "effective real property tax relief." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at p. 230; *County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 981 [156 Cal.Rptr. 777].) "Section 4 . . . is aimed at limiting local governments' ability to replace funds reduced by other sections of the article by shifting to other types of taxes." (*County of Fresno, supra,* at p. 983; fn. omitted.) Further that the general purpose of the article and the specific purpose of section 4 is contravened if City's interpretation of the article is upheld.

However, the rationale suggested by City is more consistent with the plain language of the amendment. That following passage of Proposition 13 local entities were facing severe and immediate cutbacks in property tax revenues at the commencement of a new fiscal year with already-committed projects and programs which would be difficult to terminate; that allowing the local entities some latitude for dealing with those problems is not an unreasonable assumption. The state did not have the pressing need for such latitude as the state budget was not dependent on property taxes; section 3 was added to ensure the state would not have such latitude.

In *Metropolitan Water District* v. *Dorff* (1979) 98 Cal.App.3d 109 [159 Cal.Rptr. 211], the court approved the imposition of ad valorem taxes in excess of 1 percent on property which was to be annexed to the water district in question after July 1, 1978, but the indebtedness for which the tax was imposed was approved by the voters before July 1, 1978. Appellant contended the property to be annexed was not subject to taxes in excess of 1 percent to pay the prior incurred indebtedness because it was not within the territory served by the water district at the time the indebtedness was approved. The arguments presented to the electorate in support of the amendment were submitted to the court to show the purpose of the amendment was to avoid the burden of excessive taxation of real property.

. . . .

The court stated at page 115: "... such arguments cannot supply language which does not appear in section 1, subdivision (b) of article XIII A. That provision creates an exception to the 1 percent ad valorem property tax limitation for the payment of indebtedness approved by voters before July 1, 1978, but does not state that the exception applies only to real property which was subject to taxation for the payment of such indebtedness prior to that date. ▇ '"Courts are no more at liberty to add provisions to what is declared [in the Constitution] in definite language, than they are to disregard existing express provisions [of the Constitution]."' (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 260....)"

▇ We conclude the ordinance in question enacted and made operative by City on June 29, 1978, was not affected by article XIII A and is not invalid under the provisions thereof.

The judgment is affirmed.

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied June 22, 1981, and appellants' petition for a hearing by the Supreme Court was denied July 22, 1981.