[No. D052787. Fourth Dist., Div. One. Aug. 18, 2009.]

SIDNEY WEISBLAT et al., Plaintiffs and Appellants, v.
CITY OF SAN DIEGO, Defendant and Respondent.

1026

**COUNSEL**

Edward M. Teyssier for Plaintiffs and Appellants.

Van Susteren Law Group and Adam Van Susteren for Tax Foundation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Michael J. Aguirre, City Attorney, Joe Cordileone and Bonny Hsu, Deputy City Attorneys, for Defendant and Respondent.

OPINION

NARES, Acting P. J.—

INTRODUCTION

The principal issue we must decide is whether a 2004 levy imposed by the City of San Diego (the City), without a vote of the electorate, for the primary purpose of recovering the cost of collecting and administering a general tax called the "Rental Unit Business Tax," is a fee or rather a void general or special tax that should have been approved by a vote of the electorate as required by the California Constitution. We hold that this levy is a general tax that is void because it was not approved by a majority vote of the municipal electorate as required by article XIII C, section 2, subdivision (b) of the California Constitution.

Plaintiffs Sidney Weisblat and Kenneth Ledgerwood (together plaintiffs) appeal from a grant of summary judgment in favor of the City on their complaint for declaratory and injunctive relief, which challenges on state constitutional grounds a "fee" the City imposed on owners of residential real property who are engaged in the rental of their properties within the City limits. The City imposed the levy for the primary purpose of recovering the costs incurred by the City in collecting and administering the City's rental unit business tax (sometimes referred to as the RUBT), a general tax that is levied on those same property owners but is not challenged in this appeal. The City and plaintiffs brought separate motions for summary judgment or, alternatively, summary adjudication.

In granting summary judgment in favor of the City, the trial court determined that (1) the undisputed material facts show the levy is not a general or special tax, "but rather falls within the exception set forth in [Government Code[1] section] 50076"; and (2) the levy does not violate article XIII D of the California Constitution because it is not a "tax, assessment, fee or charge" imposed by the City upon "any parcel of property or upon any person as an incident of property ownership" within the meaning of that article. The court found the City's alternative motion for summary adjudication, and plaintiffs' motion for summary judgment or, alternatively, summary adjudication, were moot.

This case presents the specific questions of (1) whether the City's levy is a fee that is exempt from the voter approval requirements of the California Constitution or rather a void general or special tax that should have been

---

[1] All further statutory references are to the Government Code unless otherwise specified.

approved by the voters in the City under Proposition 218, which (as we shall discuss, *post*) amended our state Constitution by adding articles[2] XIII C and XIII D (articles 13C and 13D); and (2) if it is a fee, whether it is a property-related fee that requires voter approval under article 13D. We specifically hold the levy is not a fee, but rather is a general tax that is subject to the voter approval limitation set forth in article 13C, section 2, subdivision (b), and is thus void because it was levied by the city council without approval by a majority vote of the qualified voters in the City. Accordingly, we reverse the summary judgment granted in favor of the City and remand the matter with directions that the trial court reach the merits of plaintiffs' motion for summary judgment or, in the alternative, summary adjudication, and conduct such further proceedings consistent with this opinion as the court deems necessary.

## FACTUAL BACKGROUND[3]

### A.  *Rental Unit Business Tax*

Pursuant to section 31.0101 of the San Diego Municipal Code (Municipal Code), the City charges all businesses operating in the City a business tax (Business Tax), which was enacted for the sole purpose of raising revenue for municipal purposes. The rental unit business tax, which is codified in Municipal Code section 31.0305,[4] is part and parcel of the Business Tax.[5] In 1990 the city council amended the Municipal Code to assess the RUBT on all rental housing.

The treasury operations division of the city treasurer's office administers the Business Tax program, which includes the RUBT program. Any increase

---

[2] All further article references are to the California Constitution.

[3] As this is an appeal from a grant of summary judgment, we recite the facts in a light favorable to plaintiffs as the losing parties. (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143] [on an appeal from a grant of summary judgment, "we must view the evidence in a light favorable to plaintiff as the losing party"].)

[4] Municipal Code section 31.0305(b), which governs the assessment of the RUBT, provides: "Every person conducting, operating, managing or renting any residential real estate, including an apartment house, flat dwelling, single or multiple family dwelling, duplex, or any other dwelling, except a motel or hotel which shall be subject to Section 31.0305(c), shall pay a business tax of fifty dollars ($50) per property plus five dollars ($5) per unit annually on all residential real estate containing at least one dwelling unit but no more than ten dwelling units, fifty-seven dollars ($57) per property plus nine dollars ($9) per unit annually on all residential real estate containing at least eleven dwelling units but no more than one hundred dwelling units, and one hundred fifty dollars ($150) per property plus eight dollars ($8) per unit on all residential real estate containing more than one hundred dwelling units."

[5] As plaintiffs' lawsuit in this case does not challenge the Business Tax or the RUBT, the validity of those taxes is not at issue in this appeal.

in the Business Tax or the RUBT must be approved by the voters. In 2004 those taxes generated $11 million for the City's general fund.

### B. *Challenged Resolution and Fee*

In June 2004 the city manager issued a report (Manager's Report) recommending to the city council that the city manager implement an annual "Business Tax and Rental Unit Tax Processing Fee" in the amount of $25 as one of the solutions to offset a $17.3 million state budget reduction. The Manager's Report informed the city council that the City's annual cost to operate the Business Tax and RUBT programs was about $3.5 million. Those costs included the collection and processing of the Business Tax and RUBT payments, printing and postage fees, and computer systems and overhead costs. The Manager's Report explained that spreading the $3.5 million cost among the 139,000 businesses operating in the City yielded the proposed $25 processing fee.

On June 28, 2004, the city council followed the city manager's recommendation and passed resolution No. R-299382 (the Resolution) authorizing the City's treasury operations division to establish and collect a "Business Tax Application, Business Tax Renewal, and [RUBT] Billing Statement Processing Fee" (the levy) in the annual amount of $25. The Resolution stated that the purpose of the levy was "to recover costs associated with processing applications and renewals for Business Tax Certificates and [RUBT] Certificates."[6] The Resolution also stated (among other things) that the city manager was "hereby directed to review the fees annually to ensure that all reasonable costs incurred in providing services are being recovered and to approve fee schedules whenever possible in accordance with [City] Administrative Regulation 95.25." The fee was imposed without voter approval.

Robbin Kulek, the City's treasury operations division manager, was responsible for overseeing the Business Tax program and was involved in determining the actual costs incurred by this program for administering the Business Tax, including the RUBT. Kulek estimated that those costs for fiscal year 2005 totaled about $3.5 million. In estimating that total cost, Kulek included the salaries and overhead of the 22 full-time Business Tax program employees, who handle the seasonal task of sending out about 80,000 RUBT

---

[6] Municipal Code section 31.0110(a) defines "Certificate" as "a certificate of payment of the business tax pursuant to Chapter III, Article 1 of this Code," and provides that "[i]ssuance of a 'certificate' does not authorize operation of a business without any permit or license required under other sections of the . . . Municipal Code, or in violation of other provisions of the laws, and it shall not be a defense to any such violation that a certificate was issued. . . ."

billing statements and processing RUBT payments. It is undisputed that the responsibilities and services of those 22 employees include responding to requests from the general public, whether those requests are made by landlords or nonlandlords, business owners or nonbusiness owners.[7]

It is also undisputed that the purpose of the levy is to recover the costs associated with the administration of the Business Tax and RUBT programs, including the cost of collecting and processing the Business Tax and RUBT payments, printing and postage fees, and the cost of computer systems and overhead. The levy is not exacted in return for permits or other governmental privileges.

In fiscal year 2005, the amount of the levy was $25. In January 2007, it was reduced to $15.

### C. *City's Rejection of Weisblat's Claim for a Refund*

Plaintiffs own residential rental property within the City and have paid the RUBT for many years. In early 2005, Weisblat received from the City an RUBT billing statement in the amount of $80, which included the $25 levy. The statement characterized the levy as a "processing fee."

Weisblat submitted a claim against the City for a refund of the $25 levy, claiming that it was an illegal tax that violated section 50076 and articles XIII A (article 13A), 13C, and 13D.

In a letter signed by Kulek and dated June 23, 2005 (Denial Letter), the City denied Weisblat's claim for a refund. Kulek indicated that the levy was authorized under section 50076, it was not a special tax, and it was not an unauthorized increase in the Business Tax. She also indicated that although the levy was denominated a "processing fee," it was a fee imposed for both services provided to, and regulatory activities related to, businesses that operate in the City. Plaintiffs' lawsuit against the City followed.

---

[7] The City's claimed undisputed material fact No. 20 states: "All [22] employees in the Treasury Operations Division are responsible for administering the City's Business Tax program. Services and regulation are provided to all businesses within the City which are subject to a business tax without reference to the nature of the business." Plaintiffs' response states: "Undisputed that the Treasury Operations Division has 22 employees whose responsibilities include responding to requests from the general public 'without reference to the nature of the business' (i.e., whether the request is from landlords or non-landlords or business owners or non-business owners). Disputed on basis of no evidence that these employees provide any regulation."

## PROCEDURAL BACKGROUND

### A.  *Complaint*

Plaintiffs brought this action for declaratory and injunctive relief in August 2006. They alleged in their *first and second causes of action* that the levy is an illegal general tax that violates article 13C, section 2, subdivision (b) because it is an increase in the RUBT that has not been approved by a majority vote of the electorate; in their *third and fourth causes of action* that the levy is an illegal special tax that violates article 13C, section 2, subdivision (d) because it is imposed, without approval of two-thirds of the electorate, for the specific purpose of paying for the administrative functions related to the collection of the RUBT; in their *fifth and sixth causes of action* that the levy is not a "fee" under section 50076, and thus is not exempt from being a special tax, because the revenue exceeds "the reasonable cost of providing the service or regulatory activity for which the [levy] is charged" within the meaning of that section; in their *seventh and eighth causes of action* that the levy is not a "fee" under section 50076, and thus is not exempt from being a special tax, because, as the City acknowledges in its Denial Letter, the revenue from the levy is being spent on a "myriad of services," rather than on processing RUBT applications and renewals as required by the Resolution; in their *ninth and 10th causes of action* that the levy is not a "fee" under section 50076, and thus is not exempt from the voter approval requirement of a special tax, because the only activity the Resolution permits to be funded by the proceeds is levying and collecting the RUBT, and thus the levy is not being collected for any activity that could legally be called a "service"; in their *11th and 12th causes of action* that the levy is a general tax that is not exempted under section 50076 because, like the RUBT, it is charged for the general governmental purpose of raising tax revenue for the City's general fund, the purpose of which is to fund a variety (or a "myriad") of general public services, and thus it is "levied for general revenue purposes" within the meaning of section 50076; in their *13th and 14th causes of action* that the levy violates article 13D because it is a property-related fee that was not approved by property owners or the voters; in their *15th and 16th causes of action* that the levy is either a tax in excess of the 1 percent ad valorem tax in violation of article 13A, section 1, subdivision (a), or it is a special tax imposed without approval of two-thirds of the electorate in violation of article 13A, section 4; and in their *17th and 18th causes of action* that the levy violates section 76.1 of the city charter because it is a special tax created, without approval of two-thirds of the electorate, for the special purpose of paying for the administration of an existing tax.

### B.  *Motions*

The City moved for summary judgment or, alternatively, summary adjudication, arguing that (1) plaintiffs' causes of action Nos. 1 through 12 and 15 through 18, which are premised on the allegation that the levy is either a general tax or a special tax, have no merit because it is neither a general tax nor a special tax, but instead is a legitimate fee under section 50076 in that it "does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged" and "is not levied for general revenue purposes"; and (2) plaintiffs' causes of action Nos. 13 and 14 have no merit because the levy is not a property-related fee that violates article 13D due to lack of voter approval because it is not a "tax, assessment, fee or charge" imposed by the City upon "any parcel of property or upon any person as an incident of property ownership."

Plaintiffs brought their own motion for summary judgment or, alternatively, summary adjudication, arguing that (1) the levy is either an increase in the RUBT and thus a general tax, or it is a new special tax, that violates article 13C because it was imposed without voter approval; (2) if it is not an excise tax or part of the RUBT, it is a property-related fee imposed in violation of articles 13A and 13D; (3) because the purpose of the levy is to pay for the imposition and collection of the RUBT, it does not provide a "service" or "regulatory activity" as those terms are used in section 50076; and (4) the City cannot prove the amount of the levy does not exceed the "reasonable costs" of providing the alleged "service" of mailing the RUBT billing statements to landlords.[8]

### C.  *Ruling*

Following oral argument on the parties' motions, the court overruled various evidentiary objections made by plaintiffs, granted summary judgment in favor of the City, and found moot plaintiffs' motion and the City's alternative summary adjudication motion. The court found the undisputed facts showed that (1) the levy is not a general or special tax; (2) it "falls within the exception set forth in [section] 50076"; and (3) it does not violate article 13D because it is not a "tax, assessment, fee or charge" imposed by the City upon "any parcel of property or upon any person as an incident of property ownership."

---

[8] In another argument that is not at issue in this appeal, plaintiffs asserted there is no legal or factual basis for the City's third affirmative defense (failure to exhaust administrative remedies), fourth affirmative defense (noncompliance with claim presentation requirements), and fifth affirmative defense (exercise of the City's police powers).

## SUMMARY JUDGMENT STANDARD OF REVIEW

On an appeal from a grant of summary judgment, we independently examine the record to determine whether a triable issue of material fact exists. (*Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at p. 767.) In performing our de novo review, we view the evidence in a light favorable to the losing party (here, plaintiffs), liberally construing their evidentiary submission while strictly scrutinizing the prevailing party's (here, the City) own showing, and resolving any evidentiary doubts or ambiguities in favor of the losing party. (*Id.* at pp. 768–769.)

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted (*Aguilar*).) A defendant moving for summary judgment bears the burden of persuasion that one or more elements of the cause of action in question cannot be established or that there is a complete defense thereto. (*Ibid.*; Code Civ. Proc., § 437c, subds. (*o*), (p)(2).) In such a case, the moving defendant bears the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

If the moving defendant meets its burden of production, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar, supra*, 25 Cal.4th at p. 850.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.)

## CONSTITUTIONAL AND STATUTORY FRAMEWORK

Although this appeal involves constitutional provisions (discussed, *post*) enacted when voters passed Proposition 218 in 1996, it also involves legislation enacted to implement Proposition 13, the predecessor initiative that voters passed in 1978 to constrain the taxation powers of state and local government. (See *City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 49–50 [184 Cal.Rptr. 713, 648 P.2d 935] (*Farrell*); *Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 950 [46 Cal.Rptr.2d 266].) Accordingly, we begin by reviewing the applicable constitutional and statutory framework that guides our analysis.

### A. *Proposition 13*

Determining whether a levy is a tax or a fee has been a recurring task since 1978 when California voters added article XIII A, commonly known as the Jarvis-Gann Property Tax Initiative or Proposition 13 (art. 13A), to our state Constitution. (See *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 872 [64 Cal.Rptr.2d 447, 937 P.2d 1350] (*Sinclair Paint*); *California Assn. of Prof. Scientists v. Department of Fish & Game* (2000) 79 Cal.App.4th 935, 939 [94 Cal.Rptr.2d 535].) The purpose of the initiative was to assure effective real property tax relief. (*Sinclair Paint, supra*, 15 Cal.4th at p. 872.)

Article 13A consists of four major parts: (1) a real property tax rate limitation (art. 13A, § 1); (2) a real property assessment limitation (art. 13A, § 2); (3) a restriction on state taxes (art. 13A, § 3); and (4) a restriction on local taxes (art. 13A, § 4). (*Sinclair Paint, supra*, 15 Cal.4th at p. 872; *Collier v. City and County of San Francisco* (2007) 151 Cal.App.4th 1326, 1337 [60 Cal.Rptr.3d 698] (*Collier*).)

We are peripherally concerned here with section 4 of article 13A,[9] which restricts the ability of local governmental bodies to enact specified changes in local taxes, as follows: "Cities, Counties and special districts, by a *two-thirds vote* of the qualified electors of such district, may impose *special taxes* on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district." (Italics added.)

■ Section 4 of article 13A thus prohibits cities, counties, and special districts from imposing local ad valorem real property taxes[10] and sales or transaction taxes on the sale of real property, and it permits local governmental entities to impose "special taxes" only if approved by a two-thirds vote of the qualified electors. (*Pugh v. City of Sacramento* (1981) 119 Cal.App.3d 485, 488 [174 Cal.Rptr. 119]; 9 Witkin, Summary of Cal. Law, *supra*, Taxation, § 131, p. 195.)

For purposes of section 4 of article 13A, the California Supreme Court has defined "special taxes" to mean taxes levied for a specific purpose rather than

---

[9] Section 4 of article 13A reflects a concern that any tax relief savings effectuated by operation of sections 1 and 2 of that article could be withdrawn or depleted should local entities be permitted to enact additional taxes or increase existing taxes unrelated to property. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 231 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Collier, supra*, 151 Cal.App.4th at p. 1337, fn. 7.)

[10] For purposes of article 13A, the term " 'ad valorem tax' " means any source of revenue derived from applying a property tax rate to the assessed value of property. (9 Witkin, Summary of Cal. Law (10th ed. 2005) Taxation, § 131, p. 195.)

tax levies placed in the general fund to be used for general governmental purposes. (*Sinclair Paint, supra,* 15 Cal.4th at p. 873; *Farrell, supra,* 32 Cal.3d at p. 57.)[11]

■ In *Farrell,* the Supreme Court explained that the language of article 13A, section 4 "must be strictly construed and ambiguities therein resolved so as to limit the measures to which the two-thirds requirement applies" because "the two-thirds vote requirement in section 4 is inherently undemocratic . . . ." (*Farrell, supra,* 32 Cal.3d at p. 52; see also *Collier, supra,* 151 Cal.App.4th at p. 1338; see *Carlsbad Mun. Water Dist. v. QLC Corp.* (1992) 2 Cal.App.4th 479, 486 [3 Cal.Rptr.2d 318].)

■ Unlike taxes, fees are not subject to the voter approval limitation of article 13A, section 4. (*California Assn. of Prof. Scientists v. Department of Fish & Game, supra,* 79 Cal.App.4th at p. 939.)

B. *Section 50076*

In 1978, after voters passed article 13A, the California Legislature enacted enabling legislation found at section 50075 et seq. (*Collier, supra,* 151 Cal.App.4th at p. 1338.) Section 50075 declared the Legislature's intent to provide all California cities, counties, and districts with the authority to impose special taxes under section 4 of article 13A. (*Carlsbad Mun. Water Dist. v. QLC Corp., supra,* 2 Cal.App.4th at pp. 484–485, citing § 50075 ["It is the intent of the Legislature to provide all cities, counties, and districts with the authority to impose special taxes, pursuant to the provisions of Article [13A] of the California Constitution."].)

Section 50076, the portion of the Proposition 13 enabling legislation with which we are concerned here, excludes from the term "special tax" in section 4 of article 13A "any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes."[12] (See *Sinclair Paint, supra,* 15 Cal.4th at p. 873.) Expressed another way, under section 50076 a fee may be treated as a special tax subject to the two-thirds vote requirement

---

[11] *Sinclair* and *Farrell* were decided under article 13A. (See *Sinclair Paint, supra,* 15 Cal.4th at p. 872; *Farrell, supra,* 32 Cal.3d at pp. 49–50.) We note, however, that cases decided under Proposition 13 have been used in analyzing the provisions of Proposition 218, with which we are primarily concerned here. (See *Bay Area Cellular Telephone Company v. City of Union City* (2008) 162 Cal.App.4th 686, 694, fn. 6 [75 Cal.Rptr.3d 839] (*Bay Area Cellular*), citing *Howard Jarvis Taxpayers Assn. v. City of San Diego* (1999) 72 Cal.App.4th 230, 239–240 [84 Cal.Rptr.2d 804].)

[12] Section 50076 provides in full: "As used in this article, 'special tax' shall not include any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes."

of section 4 of article 13A only when one or both of the conditions set forth in that section are found to exist, that is, (1) the fee exceeds "the reasonable cost of providing the service or the regulatory activity for which it is charged," and (or) (2) the fee is levied for "general revenue purposes." (*Carlsbad Mun. Water Dist. v. QLC Corp., supra*, 2 Cal.App.4th at p. 485; 9 Witkin, Summary of Cal. Law, *supra*, Taxation, § 309, p. 450.)

■ "Section 50076 on its face applies to fees imposed for *services* or *regulatory activities* provided by local entities." (*Bay Area Cellular, supra*, 162 Cal.App.4th at p. 698, italics added.) Thus, section 50076 does not apply unless the fee in question is imposed by a local governmental entity to provide either a service or a regulatory activity. (*Bay Area Cellular, supra*, at p. 698.)

■ In *Carlsbad Municipal Water District v. QLC Corp., supra*, 2 Cal.App.4th at page 485, this court explained that "[e]stablishing that the fee fits the exception of section 50076 to the broad constitutional restriction on the power of local agencies to impose special taxes is the burden of the local agency."

### C. Guidelines for Distinguishing Between a Tax and a Fee

■ In *Sinclair Paint*, the California Supreme Court set forth general guidelines for determining whether "taxes" are involved in particular situations and pointed out that "whether impositions are 'taxes' or 'fees' is a question of law for the appellate courts to decide on independent review of the facts." (*Sinclair Paint, supra*, 15 Cal.4th at p. 874.) The high court began by explaining the "blurr[y]" distinction between taxes and fees: "The cases recognize that 'tax' has no fixed meaning, and that the distinction between taxes and fees is frequently 'blurred,' taking on different meanings in different contexts. [Citations.] In general, *taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted.* [Citations.] Most taxes are compulsory rather than imposed in response to a voluntary decision to develop or to seek other government benefits or privileges. [Citations.]" (*Ibid.*, italics added; but see *Pajaro Valley Water Management Agency v. Amrhein* (2007) 150 Cal.App.4th 1364, 1381 [59 Cal.Rptr.3d 484] (*Pajaro Valley*) [describing the *Sinclair Paint* distinction between a tax and a fee as a false dichotomy].)

The *Sinclair Paint* court then proceeded to review the following three general categories of fees or assessments that had been analyzed by the appellate courts in California to determine whether they constituted a "special tax" within the meaning of section 4 of article 13A: "(1) *special assessments*, based on the value of benefits conferred on property; (2) *development fees*,

exacted in return for permits or other government privileges; and (3) *regulatory fees*, imposed under the police power." (*Sinclair Paint, supra,* 15 Cal.4th at p. 874, italics added.) The high court determined that "[t]he cases uniformly hold that *special assessments* on property or similar business charges, in amounts reasonably reflecting the value of the benefits conferred by improvements, are not 'special taxes' under article [13]A, section 4. [Citations.]" (*Id.* at pp. 874–875.) The Supreme Court also determined that, "[s]imilarly, *development fees* exacted in return for building permits or other governmental privileges are not special taxes if the amount of the fees bears a reasonable relation to the development's probable costs to the community and benefits to the developer. [Citations.]" (*Id.* at p. 875.)

■  With respect to *regulatory fees*, the *Sinclair Paint* court acknowledged that "the term 'special taxes' in article [13]A, section 4, ' "does not embrace fees charged in connection with regulatory activities which fees do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged and which are not levied for unrelated revenue purposes." [Citations.]' " (*Sinclair Paint, supra,* 15 Cal.4th at p. 876, quoting *Pennell v. City of San Jose* (1986) 42 Cal.3d 365, 375 [228 Cal.Rptr. 726, 721 P.2d 1111].) Summarizing case law dealing with regulatory fees, the high court explained that " 'to show a fee is a regulatory fee and not a special tax, the government should prove (1) the estimated costs of the service or regulatory activity, and (2) the basis for determining the manner in which the costs are apportioned, so that charges allocated to a payor bear a fair or reasonable relationship to the payor's burdens on or benefits from the regulatory activity.' " (*Sinclair Paint, supra,* 15 Cal.4th at p. 878, quoting *San Diego Gas & Electric Co. v. San Diego County Air Pollution Control Dist.* (1988) 203 Cal.App.3d 1132, 1146 [250 Cal.Rptr. 420].) Noting that regulatory fees in amounts necessary to carry out the purpose of a regulation are valid despite the absence of any perceived "benefit" accruing to the payers of the fees, the *Sinclair Paint* court clarified that "*all* regulatory fees are necessarily aimed at raising 'revenue' to defray the cost of the regulatory program in question, but that fact does not automatically render those fees 'taxes.' " (*Sinclair Paint, supra,* at pp. 876, 880.)

■  The *Sinclair Paint* court then adopted a "primary purpose" test for determining whether a regulatory fee should be deemed a tax: "[I]f revenue is the primary purpose, and regulation is merely incidental, the imposition is a tax, but if regulation is the primary purpose, the mere fact that revenue is also obtained does not make the imposition a tax." (*Sinclair Paint, supra,* 15 Cal.4th at p. 880, citing *United Business Com. v. City of San Diego* (1979) 91 Cal.App.3d 156, 165 [154 Cal.Rptr. 263] (*United Business*).)

In *United Business*, this court explained that "[t]he determination of whether the actual purpose of an ordinance is regulatory or revenue-raising in nature is a question of fact," and "[i]n its determination, the court will look to the substantive provisions of the ordinance and not merely its title and form." (*United Business, supra*, 91 Cal.App.3d at p. 165.)

■ The courts have also recognized that certain *user fees* are not taxes. (*Bay Area Cellular, supra*, 162 Cal.App.4th at p. 694, citing *Isaac v. City of Los Angeles* (1998) 66 Cal.App.4th 586, 596–597 [77 Cal.Rptr.2d 752] (*Isaac*).) The *Isaac* court described "user fees" as fees that are "charged only to the person actually using the service; the amount of the charge is generally related to the actual goods or services provided." (*Isaac, supra*, at p. 597.)

Special assessments and development, regulatory and user fees are generally not regarded as taxes, and thus are exempt from the reach of article 13A, because with each of these levies, a discrete group receives a benefit, service, or public improvement that inures to the benefit of that discrete group. (See *Bay Area Cellular, supra*, 162 Cal.App.4th at p. 695; *Evans v. City of San Jose* (1992) 3 Cal.App.4th 728, 738 [4 Cal.Rptr.2d 601] (*Evans*).) The courts have recognized that although the public as a whole may be incidentally benefitted by the expenditure of the proceeds of these levies, a discrete group is specially benefitted by the expenditure, and the public should not be required to finance through taxation an expenditure that benefits only a small segment of the population. (*Evans, supra*, 3 Cal.App.4th at p. 738; *Bay Area Cellular, supra*, 162 Cal.App.4th at p. 695.) Thus, the voter approval limitation of article 13A is not implicated where the burden for these expenditures is borne by the group specially benefitted by them. (*Evans, supra*, 3 Cal.App.4th at p. 738.)

■ "Although the classification of a revenue-producing device can be determinative of the lawfulness of the device, courts look to the actual attributes of the device as enacted in order to arrive at the proper classification; *the label attached to the device by the local government is not determinative*." (*Kern County Farm Bureau v. County of Kern* (1993) 19 Cal.App.4th 1416, 1422 [23 Cal.Rptr.2d 910], italics added.) A revenue measure "may have attributes of more than one of the traditional revenue devices, and may be valid despite the measure's 'hybrid' nature." (*Ibid.*)

D. *Proposition 218*

In November 1996 California voters added articles 13C and 13D to the state Constitution by approving Proposition 218, the " 'Right to Vote on Taxes Act.' " (*Bay Area Cellular, supra*, 162 Cal.App.4th at p. 692.) Proposition 218 included the following statement of purpose: " ' "The people

of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." ' " (*Bay Area Cellular, supra,* 162 Cal.App.4th at pp. 692–693; see also Historical Notes, 2A West's Ann. Cal. Const. (2009 supp.) foll. art. 13C, § 1, p. 102.)

Proposition 218, like Proposition 13, limits the power of local governments to impose taxes. (*Pajaro Valley, supra,* 150 Cal.App.4th at p. 1378.) "Section 5 of Proposition 218 required that the provisions of the act be 'liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent.' " (*Bay Area Cellular, supra,* 162 Cal.App.4th at p. 693, quoting Ballot Pamp., Gen. Elec. (Nov. 5, 1996) text of Prop. 218, § 5, p. 109, currently reprinted at Historical Notes, 2A West's Ann. Cal. Const., *supra,* foll. art. 13C, § 1, p. 102.)

### 1. *Article 13C ("general" versus "special" local government taxes)*

Proposition 218 provides that "[a]ll taxes imposed by any local government shall be deemed to be either general taxes or special taxes" (art. 13C, § 2, subd. (a)) and defines a "general tax" as "any tax imposed for general governmental purposes" (*id.,* § 1, subd. (a)). "A tax is general only when its revenues are placed into the general fund and are available for expenditure for any and all governmental purposes. [Citation.]" (*Howard Jarvis Taxpayers Assn. v. City of Roseville* (2003) 106 Cal.App.4th 1178, 1185 [132 Cal.Rptr.2d 1] (*City of Roseville*).) Under Proposition 218, "[n]o local government may impose, extend, or increase any general tax" until the matter is "submitted to the electorate and approved by a majority vote." (Art. 13C, § 2, subd. (b).)[13]

Proposition 218 defines a "special tax" as "any tax imposed for specific purposes," even if the proceeds are placed into a general fund. (Art. 13C, § 1, subd. (d)[14]; see *Bay Area Cellular, supra,* 162 Cal.App.4th at p. 696.) "[A] tax is special whenever expenditure of its revenues is limited to

---

[13] Article 13C, section 2, subdivision (b) provides in part: "No local government may impose, extend, or increase any general tax unless and until that tax is submitted to the electorate and approved by a majority vote."

[14] Article 13C, section 1, subdivision (d) provides: " 'Special tax' means any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund."

specific purposes; this is true even though there may be multiple specific purposes for which [the] revenues may be spent." (*City of Roseville, supra,* 106 Cal.App.4th at p. 1185.) Under Proposition 218, "[n]o local government may impose, extend, or increase any special tax" until the matter is "submitted to the electorate and approved by a two-thirds vote." (Art. 13C, § 2, subd. (d).)[15] Under Proposition 218, "[c]ertain kinds of impositions for specific purposes, however, are treated not as special taxes subject to the voter approval requirements but as fees not subject to those requirements." (*Bay Area Cellular, supra,* 162 Cal.App.4th at p. 693; see also § 50076 (discussed, *ante*).)

"Whether an imposition is a tax or a fee is a question of law for the appellate court to decide on an independent review of the facts. [Citations.]" (*Bay Area Cellular, supra,* 162 Cal.App.4th at p. 693.)

### 2. Article 13D (fees or charges imposed as an incident of property ownership)

The second component of Proposition 218 is article 13D, which constrains the power of local governments to impose " 'assessments, fees and charges.' " (*Pajaro Valley, supra,* 150 Cal.App.4th at p. 1378; see art. 13D, § 1.)

We are concerned here with the provisions of article 13D that pertain to "fees and charges." "Fee" and "charge," which are interchangeable terms, are defined as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an *incident of property ownership*, including a user fee or charge for a *property related service*." (Art. 13D, § 2, subd. (e), italics added.) Article 13D does not define the phrase "incident of property ownership." (Art. 13D, § 2 ("Definitions").) "Property related service" is defined as "a public service having a direct relationship to property ownership." (Art. 13D, § 2, subd. (h).)

Under article 13D, a local government agency that proposes to impose or increase a fee or charge that comes within the foregoing definition must comply with specified procedures and requirements. (Art. 13D, § 6, subd. (a).) For example, the levying agency must identify the parcels upon which the fee or charge will be imposed, and must conduct a public hearing. (Art. 13D, § 6, subd. (a)(1), (2).) The hearing must be preceded by written notice by mail to affected record owners setting forth the amount of the fee or charge proposed to be imposed upon each parcel, the basis upon which that

---

[15] Article 13C, section 2, subdivision (d) provides in part: "No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote."

amount was calculated, the reason for the fee or charge, and the date, time and location of the public hearing. (Art. 13D, § 6, subd. (a)(1).)

Article 13D also contains a voter approval limitation. With exceptions not relevant here, section 6, subdivision (c) of article 13D provides that "no property related fee or charge shall be imposed or increased" until the matter is "submitted and approved by a majority vote of the property owners of the property subject to the fee or charge or, at the option of the agency, by a two-thirds vote of the electorate residing in the affected area." Proposition 218 also imposes various specified substantive limitations, including restrictions on the use of revenues derived from such charges. (Art. 13D, § 6, subd. (b).)

## DISCUSSION

### I.  *THE LEVY IS A TAX*

The first issue we must resolve is whether the levy is a fee or a tax that is subject to the voter approval limitations of articles 13A or 13C. Application of the foregoing principles to the undisputed material facts of this case leads us to conclude that the levy is a tax that is subject to the voter approval limitation of article 13C, section 2.

■■■ As already noted, the California Supreme Court, in discussing the "blurr[y]" distinction between taxes and fees, explained in *Sinclair Paint* that "taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted." (*Sinclair Paint, supra,* 15 Cal.4th at p. 874.) In deciding whether the levy at issue here is a tax, we look first to the substantive provisions of the Resolution that authorized its imposition. (See *United Business, supra,* 91 Cal.App.3d at p. 165 [in determining whether the actual purpose of an ordinance is revenue raising in nature "the court will look to the substantive provisions of the ordinance and not merely its title and form"].)

Here, the language of the Resolution is undisputed and unambiguous. It authorizes the imposition of a "Business Tax Application, Business Tax Renewal, and [RUBT] Billing Statement Processing Fee" in the annual amount of $25 (which has since been reduced to $15). The Resolution states that the purpose of the levy is "to recover costs associated with processing applications and renewals for Business Tax Certificates and [RUBT] Certificates," which under Municipal Code section 31.0110(a) (see fn. 6, *ante*) merely certify that payment of the tax has been made. Nothing in the language of the Resolution indicates that the purpose of the levy is to fund any regulatory activity or provide any municipal services beyond those

involved in recovering the costs associated with processing the Business Tax and RUBT certificate applications and renewals.

The parties' summary judgment papers show it is undisputed that the sole purpose of the Business Tax, including the RUBT, is to raise revenue for municipal purposes; and the primary, if not the sole, purpose of the levy is to recover the costs associated with the administration of the Business Tax and RUBT programs, including the cost of collecting and processing the annual Business Tax applications and RUBT payments, the printing costs and postage fees, and the cost of computer systems and overhead, as shown by the declaration of Robbin Kulek, the City's treasury operations division manager.[16] It is also undisputed that the levy is not exacted in return for permits or other governmental privileges.

The City claims, however, that it submitted "ample evidence" of "many particularized benefits" afforded to those who pay the levy. In support of this claim, the City relies on the declaration of Kulek, who stated that unlike some cities in California, the City issues "courtesy billing notices to their RUBT payers."[17] The City asserts that Kulek's declaration shows that "business owners do get particularized benefits," including "notices that help them avoid penalties for failure to timely register their businesses." The City cites no authority, and we are aware of none, to support the City's novel position that a levy's "courtesy billing notice" is a "specific benefit conferred" within the meaning of the *Sinclair Paint* guidelines that renders a local government levy a fee, and not a tax subject to constitutionally required voter approval limitations. (See *Sinclair Paint, supra*, 15 Cal.4th at p. 874.) We are persuaded it is not; it is a means for collecting tax payments. To the extent such billing notices confer the "benefit" of assisting business owners in avoiding late payment penalties, such benefit is merely incidental to the payment-collection function of those notices.

---

[16] In her declaration, Kulek stated that the levy was "for recovery of costs associated with the collection and administration of the Business Tax and RUBT Programs beginning Fiscal Year 2005," and the amount of the levy was based on the cost to operate those programs, "includ[ing] the collection and processing of business tax and [RUBT] payments, printing and postage fees, computer systems and overhead costs." Kulek also stated that the levy "is imposed for the sole purpose of recovering the cost of the City's Business Tax Program."

[17] In paragraph 38 of her declaration, Kulek stated: "Like income taxes, all business taxes in the City regardless of the nature of the business are 'self-reporting' taxes. That is, it is up to the individual to determine whether he/she is oblig[at]ed for any reason to pay the tax and if he is, it is upon him to take the affirmative steps to fill out the forms and report whether tax is due. *Some cities in California do not issue courtesy billing notices to their RUBT payers* but require these taxpayers to register each year with the City. The City administers its RUBT assessment by sending out billing notices to ensure these property owners are in compliance with the City's municipal code and do not have to pay additional non-compliance fees which can include surcharges and late penalties and interest." (Italics added.)

In its respondent's brief, the City claims "[t]he undisputed evidence shows that the purpose for collecting the [levy] is *regulatory* . . . ." (Italics added.) In support of this claim the City relies on the Manager's Report and Kulek's declaration. This claim is unavailing. The Manager's Report recommended the implementation of the levy "as one of the solutions to offset the $17.3 million State budget reduction" and explained (among other things) that the levy would reimburse the cost to process the Business Tax applications, the Business Tax renewals, and the RUBT billing statements. It did not suggest the levy had any regulatory purpose.

In her declaration, Kulek states that she estimated the total cost of administering the Business Tax program, and her estimate "included the fact that the Business Tax Program has [22] full-time employees who provide *tax and regulatory services* for all businesses." Although Kulek states her opinion that the services of those Business Tax program employees are "regulatory" in nature, she does not identify what those regulatory services are, or in what respect they are regulatory. The Resolution contains no provision that would regulate the conduct of any person; and, as already discussed, it does not indicate that the purpose of the levy is to fund any regulatory activity.

Under the *Sinclair Paint* primary purpose test (discussed, *ante*), if revenue is the primary purpose of a levy and regulation is merely incidental, the levy is a tax, but if regulation is the primary purpose, the mere fact that revenue is also obtained does not make the levy a tax. Here, the undisputed facts show that the primary, if not the sole, purpose of the levy is to raise revenue to pay for the costs of collecting the Business Tax, including the RUBT, and of administering the Business Tax program. Any regulatory effect is merely incidental. Accordingly, we conclude the undisputed material facts establish that the levy is not a regulatory fee. We note that the City does not claim, and nothing in the record indicates, that the levy is either a special assessment or a development or user fee.

The City also claims the undisputed facts show that "the trial court correctly found that the [levy] is not a general or special tax, but rather falls within the exception set forth in [section 50076]." This claim is unavailing. As already discussed, under section 50076 a fee may be treated as a special tax only when one or both of the conditions set forth in that section are found to exist, that is, (1) the fee exceeds "the reasonable cost of providing the *service* or the *regulatory activity* for which the fee is charged," and (or) (2) the fee is levied for "general revenue purposes." (§ 50076, italics added; see also *Carlsbad Mun. Water Dist. v. QLC Corp., supra*, 2 Cal.App.4th at p. 485; *Bay Area Cellular, supra*, 162 Cal.App.4th at p. 698; 9 Witkin, Summary of Cal. Law, *supra*, Taxation, § 309, p. 450.) Section 50076,

however, has no application unless the fee in question is imposed to provide either a service or a regulatory activity.

Here, we have already concluded that the undisputed material facts establish that the primary, if not the sole, purpose of the levy is to raise revenue to pay for the cost of collecting the Business Tax, including the RUBT, and not to fund any services or regulatory activity. We conclude that section 50076 has no application to the threshold question in this case of whether the levy is a tax.

For all of the foregoing reasons, we conclude the undisputed material facts establish as a matter of law that the City imposed the levy for revenue purposes, rather than in return for a specific benefit conferred or privilege granted, within the meaning of the Supreme Court's *Sinclair Paint* guidelines for distinguishing a tax from a fee, and thus the levy is a tax for purposes of Proposition 218 (specifically, art. 13C, § 2).

## II. *THE LEVY IS A GENERAL TAX*

Having concluded that the levy is a tax for purposes of Proposition 218, the next issue we must resolve is whether it is a general tax subject to the applicable majority vote limitation (art. 13C, § 2, subd. (b)) or a special tax subject to the two-thirds vote limitation (art. 13C, § 2, subd. (d)). Applying the applicable guiding principles (discussed, *ante*) to the undisputed material facts of this case, we conclude the levy is a general tax that is void because it was imposed by the City without approval by a majority vote of the qualified electorate as required by article 13C, section 2, subdivision (b).[18]

At the outset, we note that the levy appears to be a hybrid tax that has characteristics of both a general tax and a special tax. It is undisputed that the levy proceeds are deposited in the City's general fund. To this extent it appears to be a general tax, which Proposition 218 defines as "any tax imposed for general governmental purposes." (Art. 13C, § 1, subd. (a).) As already discussed, a tax is a general tax only when its revenues are placed into the general fund and are available for expenditure for any and all governmental purposes. (*City of Roseville, supra*, 106 Cal.App.4th at p. 1185.)

---

[18] Because we have concluded the levy is not a fee that is exempt from the voter approval limitations of article 13C, and it is thus void because it was enacted without approval by the qualified voters in the City, we agree with the position of the Tax Foundation in its amicus curiae brief that we need not reach the merits of plaintiffs' contention that it is a property-related fee that requires voter approval under article 13D.

Here, however, the proceeds of the levy are not available for expenditure for any and all governmental purposes. Although the proceeds are deposited in the general fund, they are tracked in accounts separated from other tax receipts and are monitored annually to ensure the collected receipts do not exceed the cost of the Business Tax program. As already discussed, the primary purpose of the levy is to raise revenue to pay for the cost of collecting the Business Tax, including the RUBT, and of administering the Business Tax program. To this extent the levy appears to be a special tax, which Proposition 218 defines as "any tax imposed for specific purposes," even if the proceeds are placed into a general fund. (Art. 13C, § 1, subd. (d).)

Despite its dual, hybrid nature, we conclude the levy is a general tax because although it does not directly raise revenue that is available for expenditure for any and all governmental purposes, it does so indirectly. As already discussed, the Business Tax, including the RUBT, is a general tax the proceeds of which are deposited in the general fund and made available for any and all governmental purposes. Whereas before the enactment of the Resolution a portion of the Business Tax proceeds were necessarily expended on the cost of administering the Business Tax program and collecting the tax, the imposition of the levy raised funds to pay for those costs, thereby permitting *all* of the Business Tax proceeds to be deposited in the general fund for expenditure on any and all governmental purposes. Thus, in practical effect, the levy is an increase in the Business Tax and therefore an increase in a general tax. As already noted, article 13C, section 2, subdivision (b) provides that "[n]o local government may impose, extend, or increase any general tax" until the matter is "submitted to the electorate and approved by a majority vote."

For all of the foregoing reasons, we conclude the levy is a general tax that is subject to the majority vote limitation of article 13C, section 2, subdivision (b). Because it is undisputed the levy was imposed without approval by a majority vote of the qualified voters in the City, we also conclude it is void under Proposition 218. Accordingly, we reverse the summary judgment in favor of the City and remand the matter with directions to vacate the judgment in favor of the City. We note that the court did not rule on plaintiffs' motion for summary judgment or, in the alternative, summary adjudication because it found the motion was moot in light of its ruling in favor of the City. Because the court did not reach the merits of plaintiffs' motion, and in their complaint plaintiffs seek various forms of relief including a refund of all fee proceeds collected to date, we must remand this matter for further proceedings.

## DISPOSITION

The summary judgment for the City is reversed, and the matter is remanded with directions to vacate the judgment in favor of the City; reach the merits of plaintiffs' motion for summary judgment or, in the alternative, summary adjudication; and conduct such further proceedings consistent with this opinion as the court deems necessary. Plaintiffs shall recover their costs on appeal.

McDonald, J., and Aaron, J., concurred.