Filed 4/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CALIFORNIA TOW TRUCK ASSOCIATION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent. | A135960<br><br>(San Francisco County<br>Super. Ct. No. CGC-10-501458) |

State law generally preempts local law in the field of traffic control. (*Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 550 [a city has no authority over vehicular traffic control unless expressly provided by the Legislature].) There are exceptions, and this appeal concerns one of those exceptions: The Legislature has allowed local regulation of tow truck companies and drivers. Given that power, San Francisco and other cities have adopted permit systems to regulate towing service. The question is whether tow truck companies and drivers must obtain a permit in each jurisdiction in which they tow cars. Contrary to the decision reached by the trial court, we conclude San Francisco is authorized to regulate only those tow truck companies and drivers who maintain their principal place of business or employment in that city. We also conclude San Francisco may collect a fee or fees to cover the cost of that regulation.

## I. BACKGROUND

### A. San Francisco's Tow Truck Regulatory Scheme

The City and County of San Francisco (the City or San Francisco) requires both tow truck drivers and tow truck companies to obtain permits to tow cars in the City. The

1

permit requirements are found in the City's Police Code. (S.F. Police Code, §§ 3000–3013, 3050–3065.) The code requires tow truck drivers to complete a permit application that requests personal, employment and license information. (*Id.,* § 3002.) The applicant is also required to provide information on all criminal offenses for which he or she has been arrested, a complete set of fingerprints, and a current photograph. (*Id.*, § 3002, subd. (5); § 3003, subds. (b), (c).) The applicant must pay a filing fee and a fingerprinting fee. (*Id.,* § 3003, subds. (a), (e).)

The Chief of Police will grant the application unless the applicant has been convicted of certain crimes within the prior four years. (S.F. Police Code, § 3004, subd. (a).) Those crimes include burglary, robbery, theft, receipt of stolen property, breaking or removing parts from a vehicle, malicious mischief to a vehicle, unlawful use or tampering by the bailee of a vehicle, or altering a vehicle identification number. (*Ibid.*) The application may also be denied if the applicant has "acted in violation" of the criminal statutes for the preceding crimes. (*Id.*, subd. (b).) Finally, the chief may deny the application if the driver intentionally falsified any statement in the application. (*Id.*, subd. (c).)

The owner or owners of a "Tow Car Firm" are required to prepare an application and submit information similar to that provided by drivers, including fingerprints and current photographs.[1] (S.F. Police Code, §§ 3051, subd. (1); 3052; 3053.) The applicant must also provide a description of the firm's business operations and information regarding its vehicles, employees, and insurance. (*Id.,* § 3052, subds. (3), (4), (5) & (6).) The Chief of Police will grant the application unless the firm does not possess a minimum amount of liability insurance or the requisite equipment or facilities to protect towed vehicles. (*Id.,* § 3054, subds. (1), (2).) An owner's conviction for any one of several serious crimes can also disqualify the firm from obtaining a permit, as will

---

[1] The Police Code uses the term "Tow Car" instead of tow truck. (S.F. Police Code, §§ 3001; 3051, subd. (2).) There is no question, however, that the relevant Police Code sections apply to persons and businesses providing what is commonly called tow truck service. (See Veh. Code, § 615, subd. (a).)

2

falsifying any statement or omitting information from the application. (*Id.*, § 3054, subds. (3), (4).) Finally, the firm must possess a bank credit card machine. (*Id.*, § 3054, subd. (5).)

The towing firm must pay a filing fee with its application. (S.F. Police Code, § 3053, subd. (4).) If the firm obtains a permit, it must pay a "license" fee based on the number of trucks used in the business. The permit must be renewed (and the license fee paid) annually. (*Id.,* § 3062.)

The City imposes various requirements on permitted towing firms, including reporting tows from private property to City authorities within 30 minutes of the tow, maintaining records for each tow, and notifying the police of any changes in vehicles or drivers. (S.F. Police Code, §§ 3057, 3058, 3060.) The firm must also make available a brochure prepared by the police department that summarizes California law on the rights and responsibilities of vehicle owners, tow operators, and real property owners with respect to tows from private property. (*Id.,* § 3055.2, subds. (c), (d).)

A permit may be revoked. The Chief of Police shall revoke a driver's permit "if after a hearing on the matter he finds that grounds exist which would have constituted just cause for refusal to issue such a permit." (S.F. Police Code, § 3011.) A firm's permit may be revoked for a host of reasons, including criminal convictions, improper or excessive tow or storage charges, improper tows, failure to maintain required insurance, or the employment of drivers who do not possess a valid permit. (*Id.,* § 3056.)

Towing vehicles without a permit is a misdemeanor. (S.F. Police Code, §§ 3012, 3064.)

### B. *The Challenge to the Permit System*

The California Tow Truck Association (the Association) represents more than 1,000 towing companies doing business in California. The Association filed a complaint for declaratory and injunctive relief challenging the City's tow truck regulatory scheme. The Association alleged the permit system was preempted by federal and state law, and that all or part of the system was unconstitutional. With respect to the state preemption claim, the Association alleged preemption by provisions in the Vehicle Code and the

3

Revenue and Taxation Code. The Association sought a permanent injunction prohibiting the City from enforcing the permit system.

The City removed the case to federal court, where litigation of the federal preemption and constitutional issues resulted in nearly all of the provisions of the permit system surviving the Association's challenge. (See *Calif. Tow Truck Ass'n v. City of San Francisco* (2012) 693 F.3d 847; *CA Tow Truck Ass'n v. City & Cty. of San Francisco* (N.D. Cal. 2013) 928 F.Supp.2d 1157.) The federal district court, however, remanded the state preemption issues back to the state court. (*California Tow Truck Ass'n. v. City & County of San Francisco* (N.D. Cal. 2010) 2010 WL 5071602, p. 8.)

On remand, the Association and the City filed cross-motions for judgment on the pleadings. The trial court denied the Association's motion and granted the City's motion. The trial court concluded San Francisco's permit system was not preempted by state law so long as the City applied the scheme only to "those drivers and firms that conduct substantial or consequential business in San Francisco." The court offered the Association an opportunity to amend its complaint to allege "the towing permit scheme is being applied to drivers and firms that perform minimal or transitory work in the City." The court provided no analysis of the Association's tax preemption claim, but offered the Association the opportunity to amend its complaint to allege the permit fees were "impermissible taxes." The Association apparently chose not to amend its pleadings. The court therefore entered judgment in favor of the City.

## II. DISCUSSION

### A. Standard of Review

We independently review a trial court's order granting a motion for judgment on the pleadings. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515.) The factual allegations of the pleadings are accepted as true and are given a liberal construction. (*Id.* at pp. 515–516.) In addition to the pleadings, the court may also consider matters subject to judicial notice. (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 116.)

4

A trial court's interpretation of statutory law is also subject to independent review. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)

B. *State Regulation of Tow Truck Service*

Cities and counties may make and enforce ordinances and regulations not in conflict with "general laws." (Cal. Const. art. XI, § 7.) Local legislation that conflicts with state law, however, is void. (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743.) A conflict exists when local legislation duplicates, contradicts, or enters an area fully occupied by state law. (*Ibid.*)

The state has expressly manifested an intent to occupy fully the subject matter governed by the Vehicle Code: "Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the state and in all counties and municipalities therein, and a local authority shall not enact or enforce any ordinance or resolution on the matters covered by this code, including ordinances or resolutions that establish regulations or procedures for, or assess a fine, penalty, assessment, or fee for a violation of, matters covered by this code, unless expressly authorized by this code." (Veh. Code, § 21, subd. (a).)[2]

The state regulates tow truck service through a variety of Vehicle Code provisions. (See e.g., §§ 615, subd. (a) [defining tow truck]; 10650 [record keeping requirements for vehicle storage]; 12110 [towing service shall not pay commission or compensation for arranging tow]; 22513 [stopping on highway and soliciting of services at scene of accident]; 22651.07 [charges for tow or storage and required notice to vehicle owner]; 22651.1 [requiring acceptance of cash or credit card for payment of towing and storage]; 22658 [towing vehicle from private property]; 24605 [lamp requirements]; 25253 [warning lights]; 27700 [required equipment]; 29004 [towing requirements].)

Notwithstanding the state's involvement in regulating tow truck service, the Legislature has expressly permitted local authorities to license and regulate the "operation of tow truck service or tow truck drivers whose principal place of business or

_____

[2] All further statutory references are to the Vehicle Code unless otherwise noted.

5

employment is within the jurisdiction of the local authority."  (§ 21100, subd. (g)(1).)  There is no dispute here that the City can regulate some tow service.  The question is whether all tow truck companies and drivers with substantial operations in the City are subject to the City's permit system, or whether only those tow truck operators who have their "principal place of business or employment" in San Francisco are subject to the regulations.

### C.  Principal Place of Business or Employment

The trial court concluded that "principal place of business or employment" meant companies and drivers who "conduct substantial or consequential business" within the jurisdiction (San Francisco).  The Association contends the trial court's interpretation has no basis in the statutory text and is incapable of meaningful definition.  The Association argues the language of subdivision (g)(1) of section 21100 is plain and unambiguous, and that the City's permit system, which is not limited to companies and drivers whose principal place of business or employment is within San Francisco, exceeds the limited authority granted by the Legislature.

 "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

There is no doubt the Legislature intended vigorous local regulation of tow truck service.  Subdivision (g)(2) of section 21100 provides:  "The Legislature finds that the safety and welfare of the general public is promoted by permitting local authorities to

6

regulate tow truck service companies and operators by requiring licensure, insurance, and proper training in the safe operation of towing equipment, thereby ensuring against towing mistakes that may lead to violent confrontation, stranding motorists in dangerous situations, impeding the expedited vehicle recovery, and wasting state and local law enforcement's limited resources." We agree with the Association, however, that the Legislature, through the use of the phrase "principal place of business or employment," in section 21100, subdivision (g)(1), intended that the regulation come from a single local jurisdiction.

The City contends the Legislature intended to allow any jurisdiction where a company does "a substantial amount of business" to impose a permit system on that company. The City acknowledges that in "many contexts" a company can have only one principal place of business, but claims this is not always so, citing *U.S. v. Clinical Leasing Service, Inc.* (5th Cir. 1991) 925 F.2d 120 (*Clinical Leasing Service*) as an example. But that decision, if relevant at all, supports the Association's—not the City's—arguments.

*Clinical Leasing Service* involved the federal government's regulation of medical providers dispensing controlled substances. Every person distributing controlled substances is required to register annually with the United States Attorney General. (21 U.S.C. § 822.) A "separate registration" is required at " 'each principal place of business.' " (*Id.*, subd. (e).) The circuit court concluded it was evident from the plain language of the statute that a physician must separately register at each physical location from which a controlled substance was dispensed. (*Clinical Leasing Service, supra,* 925 F.2d at p. 122.)

There is no qualifying language such as "each" or "separate" in section 21100, subdivision (g)(1). Nothing in the subdivision suggests the Legislature intended that tow truck firms or drivers would have to obtain a permit in each and every (separate) jurisdiction in which they do business. It would have been simple enough for the Legislature to give local authorities the power to regulate tow truck service *operating* within the jurisdiction of a city or county. For example, Government Code, section

7

53075.5, which provides for local regulation of taxicab service, applies to service "which is operated within the jurisdiction of the city or county." (*Id.,* subd. (a).) Section 21100, in contrast, provides for local regulation of tow truck services or tow truck drivers if their principal place of business or employment is within the jurisdiction of the local authority.

We also agree with the Association that the City's proposed test for permitting regulation under the statute, *i.e.,* doing "substantial business" in the jurisdiction, does not provide a meaningful standard. In describing this proposed standard, the City itself refers to towing companies "routinely" doing business in a city; or companies "regularly" doing business in San Francisco by "towing multiple vehicles per day in San Francisco"; or companies planning to respond to towing calls from San Francisco. These varied formulations reflect the difficulties in defining "substantial business" and also do not relate to or comport with the statutory language of "principal place of business or employment."[3]

The City concedes section 21100, subdivision (g)(1), "viewed in isolation, could be construed as imposing the limitation [the Association] urges." The City contends, however, that this construction would lead to absurd results. (See *Coalition of Concerned Communities, Inc. v. City of Los Angeles, supra,* 34 Cal.4th at p. 737 [courts will follow plain meaning unless literal interpretation would result in absurd consequences].) According to the City, tow truck companies would simply set up their headquarters in neighboring jurisdictions with no tow service regulation, while operating primarily in a jurisdiction that has adopted ordinances regulating tow trucks, thus vitiating the entire purpose of the statute. Relying on the Legislature's statement in support of local regulation (section 21100, subd. (g)(2)), and the legislative history for that subdivision, expressing concern over abusive practices by tow companies,[4] the City

---

[3] We do not decide what "principal place of business or employment" means, for purposes of section 21100, because the issue is not before us.

[4] The City identifies its legislative history document as "Statement of Bill Sponsor, Assemblymember Jackie Goldberg." It is not clear to this court, however, exactly what the document represents. In any event, the document, which is part of the

8

argues that section 21100 is "best construed" as authorizing local regulation by any jurisdiction where the tow service does a "substantial amount of business." The City also cites cases that demonstrate the real harm citizens can suffer at the hands of tow truck operators. (See *People ex. Rel. Renne v. Servantes* (2001) 86 Cal.App.4th 1081, 1085–1087; *Porter v. City of Atlanta* (1989) 384 S.E.2d 631, 634.)

The Association, for its part, points out that the cost of obtaining permits in multiple jurisdictions could become unduly burdensome. In San Francisco, for example, the City requires a filing fee (and fingerprinting fee) for both tow firm and driver permit applications. (S.F. Police Code, §§ 3003, 3053.) The City then requires an annual license fee to maintain a permit. (§§ 3008, 3062.) A towing company's license fee is calculated based on the number of trucks it operates. According to the Association, even a small towing company could incur thousands of dollars in filing fees and annual licensing fees. The Association also discounts the City's fears of tow truck operators fleeing to neighboring cities to avoid regulation. It argues that towing businesses already located in San Francisco are unlikely to relocate, en masse, and that firms operating under local permits by the City would have a competitive advantage in securing business within the City.

We do not discount the City's apprehension. The City's representation that some of its neighboring jurisdictions impose no regulations on tow truck businesses is a legitimate concern. Of course, towing companies located in jurisdictions with no local regulations are still subject to the provisions of the Vehicle Code regulating their practices and providing penalties for misconduct, and the local jurisdictions would be free to enact a regulatory scheme to govern those companies. In any event, it is not at all

---

record, states: "A number of towing companies that illegally tow cars and then demand exorbitant fees for their return have plagued California in recent years. This unscrupulous practice has cost motorists hundreds of thousands of dollars and stranded countless people at all hours, many of whom are elderly, infirm, or with infants and small children. The hostile and violent behavior exhibited by these dishonest and 'bandit' tow truck operators have [sic] created an unfairly negative image of the legitimate towing industry."

clear that a tow service can avoid regulation simply by locating its front office—or even its storage yard—in a city with no tow service regulations if virtually all of its towing business is done in a regulated jurisdiction.[5]

Notwithstanding the City's legitimate concerns, we cannot conclude the interpretation of section 21100, subdivision (g)(1), urged by the Association—and reflecting the plain meaning of the statute—would lead to absurd results. We think the Legislature could rationally decide that towing companies doing business in multiple cities should not have to comply with a "patchwork" of regulatory schemes, nor bear the financial cost of obtaining permits in numerous jurisdictions.[6]

In support of City's position, amicus curiae League of California Cities (League) has submitted excerpts from the legislative history which demonstrate the Legislature's *general concern* regarding abusive towing practices, but otherwise offer no aid in defining the phrase "principal place of business or employment." In fact, the City states it has reviewed the legislative history of section 21100, subdivision (g)(1), and has found nothing "more informative than the statute itself about whether the Legislature believed that there could be only one principal place of business in this regulatory context." As we explain, the converse is also true—there is nothing in the legislative history indicating

---

[5] We also do not decide whether the City's concerns about the location of tow truck services outside of San Francisco to avoid the City's permitting regime can be met by the regulation of tow truck *drivers* themselves (S.F. Police Code, §§ 3000–3013). Although not addressed by the parties, we note that section 21100, subdivision (g)(1) allows local governments to regulate the "operation of tow truck service *or tow truck drivers* whose principal place of business *or employment* is within the jurisdiction of the local authority" (emphasis added).

[6] The Vehicle Code defines "local authorities" as "the legislative body of every county or municipality having authority to adopt local police regulations." (§ 385.) So, in theory, a towing service could face regulation from a county and a city within that county. The parties and amicus curiae League of California Cities have not raised this issue nor suggested that this has in fact occurred. A request for judicial notice by the League includes tow truck ordinances from the cities of Los Angeles, San Jose, Richmond and Lancaster, suggesting regulation is coming from cities. In any case, given that San Francisco is a city and a county, the question of "dual" regulation is not raised by the facts of this case.

10

the Legislature believed there could be *more* than one "principal place of business or employment."

Section 21100 was amended in 1968 to permit local authorities to adopt rules and regulations regarding "[l]icensing and regulating the operation of tow car service." (Stats. 1968, ch. 1071, § 1, p. 2078.) That language remained the same until 1985, when the language currently found in subdivision (g)(1) was added. (Stats. 1985, ch. 710, § 2, p. 2343.) A Senate Rules Committee Report for the 1985 amendment provided by the League explains an assembly amendment to the pending bill "[l]imits the regulation of tow car service or drivers to those whose principal place of business or employment is in the jurisdiction of the local authority." (Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 704 (1985–1986 Reg. Sess.) as amended Aug. 26, 1985.) Similarly, the Legislative Council's Digest states: "The bill would also authorize local authorities to regulate tow car drivers, but would limit the regulation of tow car service or drivers to those whose principal place of business or employment is in the jurisdiction of the local authority." (Legis. Counsel's Dig., Sen. Bill No. 704 (1985–1986 Reg. Sess.) Summary Dig., p. 218.) Notably, both sources indicate there was a limit on local regulation.

Subdivision (g)(2) of section 21100 was added in 2006 by Assembly Bill No. 2210 (2005–2006 Reg. Sess.). (See stats. 2006, ch. 609, § 1, p. 4993.) The legislative document for that bill offered by the City (see fn. 3, *ante*) indicates a renewed concern regarding unscrupulous practices by towing companies. (See also Legis. Counsel's Dig., Assem. Bill No. 2210 (2005–2006 Reg. Sess.) Summary Dig., pp. 340–341.) Assembly Bill No. 2210 responded to those concerns by making a number of changes to the Vehicle Code, primarily regarding tows from private property. (See, e.g., §§ 22658, 22953.) Although the bill, by adding subdivision (g)(2), confirmed and reinforced the Legislature's desire for concurrent local regulation, the bill did not alter the statutory language stating such regulation should come from the local jurisdiction in which the towing company maintained its principal place of business.

Section 21100 must also be interpreted in its full context, which includes subdivision (g)(3). It provides, "[t]his subdivision does not limit the authority of a city or

city and county pursuant to Section 12111." Section 12111 permits a city to impose a "business license tax" on a "vehicle tower" with no fixed place of business within the jurisdiction. (*Id.,* subd. (b).) The tax is calculated based on gross receipts attributable to work within the city. (*Ibid.*) If a city has the authority to license and regulate anyone towing cars in the city, regardless of principal place of business, there would be no need for subdivision (g)(3) of section 21100. The authority to regulate and tax would be essentially coextensive. The City's authority to license and regulate, however, is limited to tow truck companies and drivers whose principal place of business or employment is within the City. The City's authority to tax under section 12111 is more expansive, and under subdivision (g)(3) of section 21100, is unaffected by the limit on local regulation.[7]

Finally, this is not the first time this court has examined the power of local authorities to regulate towing service. In *People v. PKS, Inc.* (1994) 26 Cal.App.4th 400 (*PKS*), the question was whether a towing company had violated state and local law respecting charges and procedures for tows from private property. The question of whether there could be more than one principal place of business or employment, for purposes of Section 21100, was not at issue in that appeal, but in summarizing the law, this court stated: "Section 21100, subdivision (g), permits a local entity to 'license' and 'regulate' tow truck services and drivers under certain limited circumstances— specifically, when their principal place of business or employment is within the jurisdiction of the local entity." (*Id.* at p. 406.)

---

[7] In supplemental briefing on the issue, discussed *post* (in section II.D.) both parties assumed that section 12111 has been "superseded" by the later-enacted Revenue and Taxation Code, section 7233, which prohibits local authorities from imposing an "excise or license tax of any kind, character or description" on certain "motor carriers." This may or may not be a correct assumption, but it is not relevant to our analysis. The significance of section 12111, and subdivision (g)(3) of section 21100, neither of which has been repealed, is that the statutory language demonstrates the Legislature's ability to distinguish regulation (or taxing) based on principal place of business, and regulation (or taxing) based simply on where business is done. Subdivision (g)(1) of section 21100 limits local regulatory authority, while subdivision (g)(3) clarifies that the territorial limit does not apply with respect to the power to impose a business tax.

Now that the question is squarely before this court, we confirm our statement in *PKS.* A local authority may only license and regulate tow truck services and drivers having their "principal place of business or employment" within the jurisdiction of the local authority. That is what state law allows. The City's attempt to regulate towing services and drivers whose principal place of business or employment is located in another jurisdiction is preempted by state law.

*D. Preemption by the Revenue and Taxation Code*

Revenue and Taxation Code section 7233 provides: "No city, county, or city and county, shall assess, levy, or collect an excise or license tax of any kind, character, or description whatever upon the transportation business conducted on or after the effective date of this chapter, by any for-hire motor carrier of property." The Association contends that the City's imposition of fees in connection with its permit scheme is preempted by this statute.

This statute was part of the Motor Carrier Safety Improvement Act of 1996. (Stats. 1996, ch. 1042, § 1, p. 6541.) The Legislative Counsel's Digest explains that the Act had several purposes, including a transfer of authority for safety regulation of motor carriers of property from the California Public Utilities Commission to the Department of Motor Vehicles and the California Highway Patrol. (Legis. Counsel's Dig., Assem. Bill No. 1683 (1995–1996 Reg. Sess.) Summary Dig., p. 440.) Regulation was to be funded by a permit fee on motor carriers, as set forth in a new chapter of the Revenue and Taxation Code, which included Revenue and Taxation Code section 7233. (Stats. 1996, ch. 1042, § 48, pp. 6554–6558; see Rev. & Tax. Code, §§ 7231–7236.) This new chapter was separately designated the Motor Carriers of Property Permit Fee Act (hereafter Permit Fee Act). (Rev. & Tax. Code, § 7231, subd. (a).)[8]

_____

[8] Both the Association and the City assume the Permit Fee Act applies to towing companies and present their arguments with no factual or legal analysis on that point. (See Rev. & Tax. Code, § 7232.) For purposes of this appeal, because the issue is not in dispute, we will assume tow truck firms and operators are subject to the provisions of the Act.

13

The City argues that when the Legislature enacted section 7233 in 1996, it understood the distinction between taxes and regulatory fees. "Determining whether a levy is a tax or a fee has been a recurring task since 1978 when California voters added article XIII A, commonly known as the Jarvis–Gann Property Tax Initiative or Proposition 13 (art. 13A), to our state Constitution." (*Weisblat v. City of San Diego* (2009) 176 Cal.App.4th 1022, 1034.)

In broad strokes, taxes are imposed for revenue purposes, while fees are collected to cover the cost of services or regulatory activities. (See *California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 437; *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 873–874.) The Association does not challenge the City's assertion that the monies it collects from towing companies and drivers are fees for administering the City's permit system.[9] Instead, the Association argues the excise or license tax referred to in Revenue and Taxation Code section 7233 is so broad as to encompass regulatory fees.

We find it difficult to believe the Legislature, on the one hand, granted local authorities special permission to license and regulate towing businesses, while on the other hand it forbade the collection of fees to fund that regulation. And, based solely on the language of Revenue and Taxation Code section 7233, there is no reason to draw that avoidable conclusion. (See *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [statutes must be harmonized to the extent possible].) Although the section broadly defines the taxes prohibited ("of any kind, character, or description"), the fact remains that the Legislature used the word tax, not fee. It is neither irrational nor unsound for the Legislature to block local authorities from raising revenue from motor carriers who were already paying fees and taxes to the state. At the same time, however, given the Legislature's strategy for concurrent state and local regulation of tow service, it

---

[9] The trial court offered the Association the opportunity to amend its pleadings to allege the fees were applied for general revenue purposes, or that they exceeded the amount necessary for regulatory purposes. The Association did not amend its pleadings.

follows logically that the Legislature would allow local authorities to fund their regulatory activities with fees.

The Association points out that the Legislature seemed to use the words *tax* and *fee* interchangeably in the Permit Fee Act. For example, the Act provides for the payment of a "permit fee" to the state Department of Motor Vehicles (Rev. & Tax. Code, § 7232, subd. (a)), while referring to payments to the state as a "business license tax fee" (§ 7236, subd. (a).)

Reading the Permit Fee Act more closely, however, it becomes clear the permit fee collected by the Department of Motor Vehicles is divided into two parts: a safety fee and a uniform business license tax. (Rev. & Tax. Code, § 7236, subd. (a)(1).) The business license tax is credited to the state General Fund. (*Ibid.*) The safety fee is credited to an account in the State Transportation Fund (*ibid.*), where it is available for appropriation to cover the costs of regulating motor carriers of property (*id.*, subd. (b)).

Consequently, the various provisions of the Permit Fee Act, rather than supporting the Association's argument, demonstrate the Legislature's knowledge of the distinction between taxes and fees, and the Legislature's ability to use the word *tax* when referring to revenue-raising levies, and the word *fee* when referring to levies to cover the costs of administering a regulatory program. It appears clear that the Legislature intended Revenue and Tax Code section 7233 to prevent local governments from raising revenue by way of a license tax on motor carriers of property who were already subject to a license tax by the state.[10] Conversely, we have no trouble concluding the Legislature did not forbid local authorities from collecting fees to cover the cost of regulating towing businesses, notwithstanding any other fees the state might collect from those businesses. Our conclusion is reinforced by the Legislature's express statement of interest in local regulation of tow service. (§ 21100, subd. (g)(2).) Of course, fees payable by towing

---

[10] The Association cites two very brief passages purportedly found in legislative history documents for Revenue and Taxation Code section 7233. The Association has not provided the documents containing those passages, and we do not find them in the record. In any case, the excerpts are of no assistance and are unnecessary to our analysis.

companies to local authorities will be limited because, as we have already held, the ability to regulate is restricted to the jurisdiction in which the towing company maintains its principal place of business.

### III. DISPOSITION

The judgment of the trial court is reversed.  The matter is remanded to the trial court for proceedings consistent with this opinion.


_____
Rivera, J.


We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.


A135960

16

Trial court:          San Francisco City and County

Trial judge:          Hon. Harold Kahn

Attorneys:

The Law Offices of Brooks Ellison and Patrick J. Whalen, for Plaintiff and Appellant

Dennis J. Herrera, City Attorney, Wayne Snodgrass, Deputy City Attorney, and Vince Chhabria, Deputy City Attorney, for Defendant and Respondent

Carmen A. Trutanich, City Attorney, Carlos De La Guerra, Managing Assistant City Attorney, and Debra L. Gonzales, Assistant City Attorney, attorneys for Amicus Curiae League of California Cities