[No. F017067. Fifth Dist. Oct. 29, 1993.]

KERN COUNTY FARM BUREAU et al., Plaintiffs and Respondents, v. COUNTY OF KERN, Defendant and Appellant.

## COUNSEL

B. C. Barmann, County Counsel, Mark L. Nations, Deputy County Counsel, Howard, Rice, Nemerovski, Canady, Robertson & Falk and Steven L. Mayer for Defendant and Appellant.

Stradling, Yocca, Carlson & Rauth, Robert J. Whalen and David H. Mann as Amici Curiae on behalf of Defendant and Appellant.

Ronald A. Zumbrun, Anthony T. Caso and Deborah J. La Fetra for Plaintiffs and Respondents.

Trevor A. Grimm and Jonathan M. Coupal as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**VARTABEDIAN, J.**—Kern County (the county) appeals from a judgment declaring its landfill assessment ordinance a "special tax" invalidly adopted in violation of article XIII A, section 4 of the California Constitution (section 4).[1] We find the landfill assessment is not a "special tax" and is valid, whether characterized as a regulatory/service fee or as a benefit assessment. Accordingly, we reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Between 1986 and 1990, the annual cost of operating the county's landfills rose from $2.98 million to $17.6 million. This increase resulted largely from state legislation requiring various measures to reduce the environmental impact of landfills.[2]

The county decided it could no longer fund its landfills from general revenues. It sought a method to obtain additional funding from fees. After an advisory election in 1988, the county resolved to impose fees based upon generation of landfill refuse, instead of requiring a gate fee on the actual deposit of such refuse. The county ascertained that gate fees would likely create a serious problem with illegal dumping of waste at locations other than the landfills, and that the costs of collecting gate fees would significantly increase the overall level of funding necessary to operate the landfills.

The county determined that different types of land use produced different types and amounts of refuse. Consequently, the initial ordinance directing establishment of landfill charges required the charges be based on "the

---

[1]Section 4 provides: "Cities, counties and special districts, by a two-thirds vote of the qualified electors of such district, may impose special taxes on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district."

[2]The county summarizes these requirements in its opening brief: "In the last decade, the Legislature has passed numerous laws which mandate new programs and requirements for County landfills. In 1984, the Legislature enacted AB 3525 (Stats. 1984, ch. 1532), which requires solid waste disposal sites to perform detailed 'solid waste water quality assessment tests' to determine whether hazardous wastes are leaking and/or affecting the water supply. *Id.* § [*sic*] 6 (adding Water Code § 13273 (1984)). In 1987, the Legislature enacted AB 2448 (Stats. 1987, ch. 1319, which requires landfill operators to submit closure and post-closure maintenance plans and to set aside sufficient funds to implement the plans. Stats. 1987, ch. 1319, § 2 (adding Gov't Code § 66796.22 (1987) (repealed in 1989; *see now* Pub. Res. Code §§ 43600-06)). And in 1989, the Legislature passed AB 939 (Stats. 1989, ch. 1095), which requires counties to adopt 'integrated waste management plans,' describing how 25% of the solid waste stream will be recycled, reduced, or composted by 1995 and 50% by 2000. Stats. 1989, ch. 1095, § 22 (adding new Pub. Res. Code § 41780); *see Review of Selected 1989 Legislation*, 21 Pacific L.J. 331, 503 (1990)."

amount of solid waste occurring from the various land uses." Agricultural land was originally assessed at 27 cents per acre, with a $27.50 maximum per parcel.

After the first two years of collecting the landfill charges, the county ascertained that agricultural land assessments were contributing 2.4 percent of landfill revenue. The Kern County Public Works Department determined that 5 to 8 percent of landfill waste was from agricultural land. This translated into approximately 49,500 tons of waste per year.

The county convened a committee to further study the allocation of agricultural waste. The committee included farmers, ranchers and a representative of respondent Kern County Farm Bureau. As a result of further study and consultation with the committee, the agricultural land-use fee was raised to 87 cents per acre, with no maximum. The Kern County Board of Supervisors adopted the new fee structure as ordinance No. G-5316.[3]

As a result of the increased landfill fees, respondent Ronald Lehr's assessment for his 255 acres of agricultural land went from $27.50 to $221.85. The fee for respondent Vido Fabbri went from $27.50 to $2,505.60 for his 2,880 acres. Members of the two respondent organizations were also assessed the landfill fee.

Respondents filed suit, seeking a declaratory judgment that ordinance No. G-5316 imposed a special tax in violation of section 4 and that the ordinance constituted an unlawful double tax in violation of article XIII, section 1 of the California Constitution. The county answered, denying the landfill fees violated the Constitution.

Not long after the answer was filed, respondents moved for summary judgment. The superior court eventually granted the motion for summary judgment, filing a statement of decision.

The court determined the fee was not a service fee because it was calculated on the basis of potential or permissible use, not upon actual use of

[3]As noted in the county's brief: "The County's 1990 increase in the parcel charge for agricultural property was not an isolated event. At the same time that the County raised the parcel charge for agricultural property, it also more than doubled the charge for single family dwellings (from $27.50 to $57.00), small stores or shops (from $55.00 to $114.00), and light manufacturing (from $82.50 to $171.00). Nor was agricultural property the only category of use where the County eliminated a maximum charge. In [Fiscal Year] 1989/90, for example, food and beverage establishments (restaurants, cafes, coffee shops, bars, etc.) were assessed a flat fee of $110.00; in FY 1990/91, the charge was levied on a square foot basis, with the applicable rates ranging from $.19/sq. ft. to $.77/sq. ft."

the landfills. The court concluded the fee was not a benefit assessment because the county had not shown a special benefit to the properties subjected to the fee, and the county had not established that it had statutory authority to make a benefit assessment for landfill purposes. The court's judgment declared, in part, "[T]he Kern County Landfill Service Charge as applied to agricultural land in fiscal year 1990-1991 under Kern County Ordinance G-5316 is invalid as a special tax imposed in violation of California Constitution Article XIIIA, Section 4."

DISCUSSION

I. *Overview*

■ "Article XIII A, section 4 of the California Constitution, enacted in June 1978 as part of Proposition 13, provides in relevant part that cities and counties may impose 'special taxes by a two-thirds vote of their qualified electors.' Although the section uses permissive language, the supermajority voter approval requirement was intended to restrict the taxing power of local government. [Citation.] A special tax, for purposes of that provision, is a tax levied to fund a specific governmental project or program. [Citation.] As with any tax, a special tax may be imposed upon individuals who will enjoy no peculiar benefit from its expenditure and who are not responsible for the condition to be corrected. [Citation.]

"Special taxes must be distinguished from regulatory fees imposed under the police power, which are not subject to the constitutional provision [since they are not taxes at all]. [Citation.] Special taxes do not encompass fees charged to particular individuals in connection with regulatory activities or services when those fees do not exceed the reasonable cost of providing the service or activity for which the fee is charged, and are not levied for unrelated revenue purposes." (*City of Dublin* v. *County of Alameda* (1993) 14 Cal.App.4th 264, 280-281 [17 Cal.Rptr.2d 845].)

■ Similarly, section 4's "tax limitations are not violated by legitimate special assessments." (*Knox* v. *City of Orland* (1992) 4 Cal.4th 132, 141 [14 Cal.Rptr.2d 159, 841 P.2d 144].)

"A special assessment is a ' " 'compulsory charge placed by the state upon real property within a pre-determined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement therein . . . .' " [Citation.]' [Citation.] In this regard, a special assessment is 'levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement.' [Citation.]" (4 Cal.4th at pp. 141-142.)

■ Although the classification of a revenue-producing device can be determinative of the lawfulness of the device, courts look to the actual attributes of the device as enacted in order to arrive at the proper classification; the label attached to the device by the local government is not determinative. (*Rider* v. *County of San Diego* (1991) 1 Cal.4th 1, 14-15 [2 Cal.Rptr.2d 490, 820 P.2d 1000].)

Any particular revenue measure may have attributes of more than one of the traditional revenue devices, and may be valid despite the measure's "hybrid" nature. (See, e.g., *San Marcos Water Dist.* v. *San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 162-163 [228 Cal.Rptr. 47, 720 P.2d 935] [service fee v. special assessment]; *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93 [308 P.2d 1] [service fee v. excise tax].) Thus, we reject respondents' threshold contention that "One need read no further to realize that this exaction may be alleged to be a fee *or* a benefit assessment, but it cannot be both at the same time." Case law clearly permits a local government to seek to justify a revenue device under alternative classifications, and the county's effort to do so in this case does not undermine the force of its arguments.

## II. *Service Fees Measured by Broad Classification*

We first consider whether the landfill charges in this case are valid service/regulatory fees. Respondents concede that "If the county is willing to settle on the exaction being an alleged 'fee' or 'charge,' as opposed to an alleged 'benefit assessment,' [respondents] are willing to look at Health and Safety Code § 5471 as providing statuary [*sic*] authority for a properly calculated fee or service charge."[4] Further, respondents "do not dispute that the county followed the procedures of Health and Safety Code § 5470, *et*

---

[4]Health and Safety Code section 5471 provides: "In addition to the powers granted in the principal act, any entity shall have power, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees, tolls, rates, rentals, or other charges, including water, sewer standby or immediate availability charges, for services and facilities furnished by it, either within or without its territorial limits, in connection with its water, sanitation, storm drainage, or sewerage system. However, the entity may provide that the charge for the service shall be collected with the rates, tolls, and charges for any other utility, and that any or all of these charges may be billed upon the same bill. Where the charge is to be collected with the charges for any other utility service furnished by a department or agency of the entity and over which its legislative body does not exercise control, the consent of the department or agency shall be obtained prior to collecting water, sanitation, storm drainage, or sewerage charges with the charges for any other utility. Revenues derived under the provisions in this section, shall be used only for the acquisition, construction, reconstruction, maintenance, and operation of water systems and sanitation, storm drainage, or sewerage facilities, to repay principal and interest on bonds issued for the construction or reconstruction of these water systems and sanitary, storm drainage, or sewerage facilities and to repay federal or state loans or advances made to the entity for the construction or reconstruction of water systems and sanitary, storm drainage, or sewerage

*seq.*" in enacting the landfill assessment ordinance. Therefore, the remaining question is: May the county assess the fees based on broad classifications such as "agricultural" or "residential" use, even though the actual production of waste differs among individuals or subclasses within each category?

Respondents state several bases for their argument that the broad classifications used in the ordinance render the assessment a special tax. None of the bases supports the argument.

First, respondents argue that a necessary attribute of a service or regulatory fee is that anyone has "the ability to avoid paying the fee by not using the service." Respondents cite *Russ Bldg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496 [246 Cal.Rptr. 21] in support of this contention.

*Russ* involved a city ordinance imposing a "transit fee" of up to $5 per square foot for new buildings, due as a condition of issuance of the certificate of occupancy for the building. (199 Cal.App.3d at p. 1503.) After noting that the transit fee was "limited to the estimated costs involved to serve the increased ridership" that could be expected as a result of the new office space, the court further distinguished the fee from a special tax: "Further, unlike most taxes, the fees imposed by this Ordinance are not compulsory but are exacted only if the developer voluntarily chooses to create new office space." (*Id.* at p. 1505.)

Thus in *Russ* the property owner had a choice to undertake new development or not; he did not have the choice to use the bus or not. Even if the employees in and visitors to the new office space uniformly arrived by private transportation, nonuse of the *funded service* had nothing to do with exemption from assessment of the fee. Only by refraining from the underlying activity that had the *potential* for generating a demand on public transportation (i.e., development of office space) could the owner avoid the fee.

In the present case, respondents contend even if they decline to put any waste whatsoever in the landfill, they still are assessed landfill charges. The point made by *Russ*, however, is that by refraining from using their property for agricultural purposes—and thereby avoiding the potential for generating landfill waste—the owner may be exempt from the fee. Indeed, the ordinance provides for an administrative hearing for property owners who contend property classified as agricultural is not actually being used in

facilities. However, the revenue shall not be used for the acquisition or construction of new local street sewers or laterals as distinguished from main trunk, interceptor and outfall sewers."

that manner. Further, in the present scheme, "unused" land is not assessed any fee at all.

More fundamentally, however, there is no requirement that a property owner be able to avoid the fee in order for the fee to be valid. Thus in *City of Glendale* v. *Trondsen, supra*, 48 Cal.2d at pages 101-103, a mandatory fee for rubbish collection was upheld despite the property owner's claim that he did not use the service. Similarly, in *Pennell* v. *City of San Jose* (1986) 42 Cal.3d 365 [228 Cal.Rptr. 726, 721 P.2d 1111] the city adopted a per-rental-unit annual assessment to help defray the costs of a rent control mediation process. The court rejected the landlords' claim that the fee charged them for a service they did not want: "Contrary to plaintiffs' view, the fact that landlords may not believe they 'benefit' from the rental unit fee does not transform a regulatory fee into a 'special tax.'" (*Id.* at p. 375, fn. 11.)

We further note that even though the charges at issue here are based on affirmative use of the landfills, and as such properly are viewed as constituting a service or user fee, the charges additionally serve a regulatory or police power function. As part of its policy to control and deter illegal dumping of refuse, the county has rationally determined that operation of landfills without a gate fee will encourage proper disposal of waste. Not only is the control of illegal dumping clearly within the police power, but common experience tells us that much of the illegal waste is dumped onto rural and agricultural lands. The indirect benefit of reducing such dumping through a landfill assessment system is inestimable, but is nonetheless real. (Cf. *Knox* v. *City of Orland, supra*, 4 Cal.4th at p. 149.)

Respondents also assert the fee charged is not rationally related to agricultural use of the county's landfills. To the contrary, ample evidence supports the assessment against agricultural land.

Given the county's rational rejection of gate fees (as causing illegal dumping), we understand that landfill usage "is not susceptible of mathematical calculation." (*Boynton* v. *City of Lakeport Mun. Sewer Dist.* (1972) 28 Cal.App.3d 91, 96 [104 Cal.Rptr. 409, 61 A.L.R.3d 1228].) The county evaluated various landfill sites to determine the gross percentage of agricultural waste produced.[5] The county collected data from neighboring counties

---

[5] Where unknown or unpredictable factors were identified, the county consistently employed assumptions that produced a low agricultural usage fee. Thus, in the case of ranch headquarters buildings located on agricultural land, which are offices producing waste just like any other commercial office, the county elected not to surcharge the agricultural land for the nonagricultural waste the headquarters would produce. Similarly, the volume of agricultural waste itself varied by season and weather conditions. When cold weather destroyed a

and from the state.[6] The county modified its initial presumptions concerning agricultural waste in light of its continuing review of landfill use. Recognizing this reasonably complete empirical basis for the county's landfill fees for agricultural land, we conclude the agricultural land fees are neither arbitrary nor do they discriminate against agricultural land. (See *id.* at p. 94; see also *Garrick Development Co.* v. *Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 331-332 [4 Cal.Rptr.2d 897].) The fees established by ordinance No. G-5316 are valid as service and regulatory fees; as such, two-thirds voter approval of the fees pursuant to section 4 was not required.

III. *The Landfill Charges as Special Assessments*

Independent of our analysis of the landfill charges as service or regulatory fees, we conclude that the charges constitute a valid special assessment. The county asserts that special assessments are authorized "other charges" pursuant to Health and Safety Code section 5471. The county argues that the charges meet the legal requirements for special assessments, namely that they particularly benefit the assessed property, and that the charges are in proportion to the benefit received.

Respondents initially argued that special assessments were not authorized under Health and Safety Code section 5471, that landfills were not an "improvement" that "benefited" the property, and that any imagined benefit was not proportional to the assessment. In arguing that *Knox* v. *City of Orland, supra,* 4 Cal.4th 132, should not apply to the present case, respondents assert that there is no express legislative authorization of the benefit assessment claimed here.[7]

Benefit assessments are a valid device for funding improvements under Health and Safety Code section 5471. In *San Marcos Water Dist.* v. *San Marcos Unified School Dist., supra,* 42 Cal.3d 154 the district assessed a sewer capacity fee against sewer system users to fund capital improvements for the system. The Court of Appeal held that benefit assessments were not authorized by Health and Safety Code section 5471 because (as respondents

---

fruit crop, for example, a massive amount of damaged fruit was deposited at the landfills. Nevertheless, the county adopted a "normal year" impact on the landfills as the basis for the fee, thereby understating the actual impact. Finally, even though some agricultural waste must be specially treated before it can be accepted at a landfill, the county elected not to impose a higher fee to cover the relevant costs.

[6]We note this study states only gross waste per acre for various crops. The county estimates that only 1 percent of agricultural waste is landfilled, with the remainder recycled in various ways. Nothing in the record gives any reason to believe that the 1 percent of total waste is produced uniformly as a portion of gross waste per crop-type.

[7]The parties submitted supplemental briefing after *Knox* was filed. Respondents' only argument presented was the statutory-authorization argument.

argue in the present case) "assessment" is not one of the listed "charges" authorized by that section. On review, the Supreme Court rejected the appeal court's conclusion and found that the charge was an authorized benefit assessment: "We do not find the absence of the word 'assessments' to be convincing evidence that the Legislature would not consider the fees for capital improvements to be special assessments." (42 Cal.3d at pp. 162-163.) Accordingly, we conclude Health and Safety Code section 5471 permits special assessments for the funding of improvements to landfills.

*Knox* v. *City of Orland, supra,* 4 Cal.4th 132 rejects respondents' remaining contentions. Contrary to respondents' claim that maintaining an existing level of service is not an "improvement" susceptible to benefit assessments, *Knox* held that mere maintenance of existing public facilities is a valid basis for special assessments. (*Id.* at p. 145.) Moreover, the landfill changes represent a clear environmental "improvement."

Respondents also argued that an assessment "exacted from every person or parcel within the county service area regardless of the use of the service and irrespective of the benefit to the land" would constitute a tax, not a benefit assessment. The Supreme Court expressly rejected this argument in *Knox.* (See 4 Cal.4th at pp. 148-149.)

Finally, respondents argue that the use of the county tax assessor's codes to classify the property as "agricultural" is impermissible even if it is conceded that "agricultural land" benefits from operation of the landfills. "The use codes were not created to determine the benefit to land (as measured by its increased value) by continued operation and maintenance of county landfills."

As noted above, the ordinance contains a reclassification mechanism for owners whose property is not in fact in agricultural production. As to the parcels that are in agricultural production, the record contains uncontradicted evidence that disposal of pesticide containers in county landfills, as well as the reduction in illegal dumping as a result of the assessment system, produces a particular benefit to agricultural land. (Cf. *Knox, supra,* 4 Cal.4th at pp. 148-149.) Thus, the county's landfill charges are exempt from California Constitution article XIII A as a benefit assessment. (4 Cal.4th at pp. 142-143.)[8]

---

[8]We note from the record that public entities have received charges pursuant to ordinance No. G-5316. We express no opinion whether the charges are service/regulatory fees or are benefit assessments as that dichotomy is discussed in *San Marcos Water Dist.* v. *San Marcos Unified School Dist., supra,* 42 Cal.3d 154 (public entities exempt from benefit assessments but must pay service/regulatory fees). (See also *Terminal Plaza Corp.* v. *City and County of San Francisco* (1986) 177 Cal.App.3d 892, 905-906 [223 Cal.Rptr. 379].)

## IV. *Not Double Taxation*

 Respondents' remaining argument is that if the landfill charges constitute a tax, then that tax violates the prohibition on double taxation embodied in California Constitution article XIII, section 1. (See *Flynn* v. *San Francisco* (1941) 18 Cal.2d 210, 215 [115 P.2d 3].) However, based on the above discussion, the charge is not a tax, double or otherwise. Accordingly, assessment of the charges cannot constitute double taxation. (See *Associated Home Builders, Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 642 [94 Cal.Rptr. 630, 484 P.2d 606, 43 A.L.R.3d 847] ["Double taxation occurs only when 'two taxes of the same character are imposed . . . .' " (Italics added.)].)

### DISPOSITION

The judgment is reversed. The county is awarded costs.

Stone (W. A.), Acting P. J., and Ardaiz, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 27, 1994. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.